**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEY EQUIPMENT FINANCE INC.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SIMOS CARTAGE CO., INC. and CORNELIUS SIMOS, individually and CORNELIO SIMOS, Sr. individually**<br><br>**Defendants.** | ) | **CASE NO. 07-CV-6779** |

## AMENDED COMPLAINT

COMES NOW, KEY EQUIPMENT FINANCE INC., plaintiff in the instant matter, by and through its attorneys, Coston & Rademacher, and complains against Defendants, SIMOS CARTAGE CO., INC ("CARTAGE"), CORNELIUS SIMOS ("SIMOS") individually and CORNELIO SIMOS, Sr. ("SR") individually as follows:

## NATURE OF ACTION

1. This action arises out of CARTAGE's refusal and failure to perform its obligation as lessee under an equipment lease agreement and SIMOS' and SR's failure to perform their obligations under the personal guaranty agreements related to the lease agreements.

## JURISDICTION

2. Plaintiff is a corporation organized under the laws of the State of Michigan, with its principal place of business in Superior, Colorado.

3. Upon information and belief, Defendant SIMOS CARTAGE CO., INC is an Illinois corporation organized under the laws of the State of Illinois, with its principal place of business at 385 Cimarron Dr. W., Aurora, IL 60504.

4.    Upon information and belief, Defendant CORNELIUS SIMOS is a citizen of the State of Illinois and resides at 385 Cimarron Dr. W., Aurora, IL 60504.

5.    Upon information and belief, Defendant CORNELIO SIMOS, SR. is a citizen of the State of Illinois and resides at 2655 Wheatfield Ct., Aurora, IL 60502.

6.    Jurisdiction in this Court is proper under 28 U.S.C. §1332 and Fed. R. Civ. P. 18(a) as the total amount in controversy exceeds $75,000.00 exclusive of interest and costs that may be heard by this Court.

7.    Venue in this action is proper pursuant to 28 U.S.C. §1391 (a) in that a substantial part of the events giving rise to this claim occurred in the Eastern Division of the Northern District of Illinois.

**COUNT 1**
**BREACH OF CONTRACT**
**LEASE #CW01264577**

1.    On or about November 2, 2006, CARTAGE entered into a Vehicle Finance Agreement #CW01264577 (Agreement I") with KEY EQUIPMENT, whereby KEY EQUIPMENT agreed to lease to CARTAGE that certain 1999 Mack CH613 truck ("Vehicle I"), and CARTAGE agreed to pay twenty-four (24) monthly installments of $1,075.87 each therefore.  A true and correct copy of Agreement I is attached hereto and incorporated herein as Exhibit A.

2.    CARTAGE also executed a written Guaranty of Agreement I, which Guaranty appears at the bottom of the cover page of Agreement I (see attached Exhibit A).

3.    Pursuant to paragraph 5 of Agreement I, CARTAGE agreed to always apprise KEY EQUIPMENT of the location of Vehicle I, and pursuant to paragraph 9 of

Agreement I, CARTAGE agreed to keep Vehicle I "free from any and all liens and encumbrances." Pursuant to the terms of Agreement I, CARTAGE also agreed to pay the taxes on Vehicle I (Agreement I paragraph 8), and to insure Vehicle I (Agreement I paragraph 7).

4.    Upon default of Agreement I, CARTAGE agreed to pay: (a) a late charge (Agreement I paragraph 12); (b) any unpaid balance (Agreement I paragraph 11); (c) the accelerated balance of any and all amounts due under Agreement I (Agreement I paragraph 11); and (d) attorneys' fees and costs incurred by KEY EQUIPMENT (Agreement I paragraph 11).

5.    Upon default of Agreement I, CARTAGE also agreed to surrender possession of Vehicle I and to reimburse KEY EQUIPMENT for the costs, including refurbishment of Vehicle I, related to such repossession (Agreement I paragraph 11).

6.    KEY EQUIPMENT has performed its obligations pursuant to the terms of Agreement by, among other things, supplying Vehicle I to CARTAGE.

7.    CARTAGE breached Agreement I by failing to make monthly installment payments thereon beginning on or about February 10, 2007. Said failure constitutes a "default" pursuant to paragraph 11 of Agreement I.

8.    As a result of the aforementioned default, as of December 1, 2007, KEY EQUIPMENT claimed as due and owing pursuant to Agreement I, $19,182.36, which is based on: (a) the past due unpaid balance of $10,758.70 (Agreement I paragraph 11); plus (b) the accelerated balance of all amounts due under Agreement I, discounted to present value, totaling $12,562.96 (Agreement I paragraph 11); plus (c) late charges totaling $860.70 (Agreement I paragraph 12); less (d) $5,000.00 in sale

proceeds from repossession and sale of the vehicle (see attached Exhibit B).

9. The foregoing sum was demanded from CARTAGE, and CARTAGE failed and refused to pay said sum, which sum remains due and owing.

10. As a result of the aforementioned default, KEY EQUIPMENT now also claims: (a) statutory interest at a rate of 5% per annum on the aggregate principal amount of $10,758.70, which interest amounts to $430.71 from February 10, 2007, through December 1, 2007, for unreasonable and vexatious delay of payment pursuant to Illinois Compiled Statutes, Chapter 815, § 205/2; said interest continues to accrue at a rate of $1.47 per day; and (b) attorneys' fees and costs incurred by KEY EQUIPMENT (Agreement I paragraph 11).

**WHEREFORE,** Plaintiff, KEY EQUIPMENT FINANCE INC., prays for judgment against Defendant, SIMOS CARTAGE CO., INC., in at least the sum of $19,182.36, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

**COUNT II**
**BREACH OF CONTRACT**
**LEASE # CW01267897**

11. Plaintiff repeats, realleges and incorporates herein by reference each of the allegations contained in the foregoing paragraphs 1 through 10 of this Complaint, inclusive, as if fully set forth herein.

12. On or about November 22, 2006, CARTAGE entered into a Vehicle Finance Agreement #CW01267897 ("Agreement II") with KEY EQUIPMENT, whereby KEY EQUIPMENT agreed to lease to CARTAGE that certain 2002 Mack CX613 VIN ending 012575 and 2002 Mack CX613 VIN ending 012571 ("Vehicle II"), and

CARTAGE agreed to pay thirty-six (36) monthly installments of $1,976.20 each therefor. A true and correct copy of Agreement II is attached hereto and incorporated herein as Exhibit C.

13. CARTAGE also executed a written Guaranty of Agreement II, which Guaranty appears at the bottom of the cover page of Agreement II (see attached Exhibit C).

14. Pursuant to paragraph 5 of Agreement II, CARTAGE agreed to always apprise KEY EQUIPMENT of the location of Vehicle II, and pursuant to paragraph 9 of Agreement II, CARTAGE agreed to keep Vehicle II "free from any and all liens and encumbrances."

15. Pursuant to the terms of Agreement II, CARTAGE also agreed to pay the taxes on Vehicle II (Agreement H paragraph 8), and to insure Vehicle II (Agreement II paragraph 7).

16. Upon default of Agreement II, CARTAGE agreed to pay: (a) a late charge (Agreement II paragraph 12); (b) any unpaid balance (Agreement II paragraph 11); (c) the accelerated balance of any and all amounts due under Agreement II (Agreement II paragraph 11); and (d) attorneys' fees and costs incurred by KEY EQUIPMENT (Agreement II paragraph 11).

17. Upon default of Agreement II, CARTAGE also agreed to surrender possession of Vehicle II and to reimburse KEY EQUIPMENT for the costs, including refurbishment of Vehicle II, related to such repossession (Agreement II paragraph 11).

18. KEY EQUIPMENT has performed its obligations pursuant to the terms of Agreement by, among other things, supplying Vehicle II to CARTAGE.

19.     CARTAGE breached Agreement II by failing to make monthly installment payments thereon beginning on or about January 1, 2007.  Said failure constitutes a "default" pursuant to paragraph 11 of Agreement II.

20.     As a result of the aforementioned default, as of December 1, 2007, KEY EQUIPMENT claimed as due and owing pursuant to Agreement II $50,688.09, which is based on: (a) the unpaid balance of $23,714.40 (Agreement II paragraph 11); plus (b) the accelerated balance of all amounts due under Agreement II, discounted to present value, totaling $44,811.68 (Agreement II paragraph 11); (c) late charge totaling $1,162.01 (Agreement II paragraph 12); less (d) $19,000.00 in sale proceeds from repossession and sale of the vehicles (see attached Exhibit D).

21.     The foregoing sum was demanded from CARTAGE, and CARTAGE failed and refused to pay said sum, which sum remains due and owing.

22.     As a result of the aforementioned default, KEY EQUIPMENT now also claims: (a) statutory interest at a rate of 5% per annum on the aggregate principal amount of $23,714.40, which interest amounts to $1,085.50 from January 1, 2007, through December 1, 2007, for unreasonable and vexatious delay of payment pursuant to Illinois Compiled Statutes, Chapter 815, § 20512; said interest continues to accrue at a rate of $3.25 per day; and (b) attorneys' fees and costs incurred by KEY EQUIPMENT (Agreement II paragraph 11).

**WHEREFORE,** Plaintiff, KEY EQUIPMENT FINANCE INC., prays for judgment against Defendant, SIMOS CARTAGE CO. INC, in at least the sum of $50,688.09, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

**COUNT III**
**BREACH OF CONTRACT**
**LEASE # CW01259456**

23. Plaintiff repeats, realleges and incorporates herein by reference each of the allegations contained in the foregoing paragraphs 1 through 22 of this Complaint, inclusive, as if fully set forth herein.

24. On or about November 7, 2006, CARTAGE entered into a Vehicle Finance Agreement # CW01259456 ("Agreement III") with KEY EQUIPMENT, whereby KEY EQUIPMENT agreed to lease to CARTAGE that certain 2003 KW T2000 truck ("Vehicle III"), and CARTAGE agreed to pay forty-two (42) monthly installments of $1,552.70 each therefor. A true and correct copy of Agreement III is attached hereto and incorporated herein as Exhibit E.

26. CARTAGE also executed a written Guaranty of Agreement III, which Guaranty appears at the bottom of the cover page of Agreement III (see attached Exhibit E).

27. Pursuant to paragraph 5 of Agreement III, CARTAGE agreed to always apprise KEY EQUIPMENT of the location of Vehicle III, and pursuant to paragraph 9 of Agreement III, CARTAGE agreed to keep Vehicle III "free from any and all liens and encumbrances." Pursuant to the terms of Agreement III, CARTAGE also agreed to pay the taxes on Vehicle III (Agreement III paragraph 8), and to insure Vehicle III (Agreement III paragraph 7).

28. Upon default of Agreement III, CARTAGE agreed to pay: (a) a late charge (Agreement III paragraph 12); (b) any unpaid balance (Agreement III paragraph 11); (c) the accelerated balance of any and all amounts due under Agreement III (Agreement III paragraph 11); and (d) attorneys' fees and costs incurred by KEY

EQUIPMENT (Agreement III paragraph 11).

29.    Upon default of Agreement III, CARTAGE also agreed to surrender possession of Vehicle III and to reimburse KEY EQUIPMENT for the costs, including refurbishment of Vehicle III, related to such repossession (Agreement III paragraph 11).

30.    KEY EQUIPMENT has performed its obligations pursuant to the terms of the Agreement by, among other things, supplying Vehicle III to CARTAGE.

31.    CARTAGE breached Agreement III by failing to make monthly installment payments thereon beginning on or about February 10, 2007. Said failure constitutes a "default" pursuant to paragraph 11 of Agreement III.

32.    As a result of the aforementioned default, as of October 1, 2007, KEY EQUIPMENT claimed as due and owing pursuant to Agreement III $38,140.77, which is based on: (a) the unpaid balance of $15,527.00 (Agreement III paragraph 11); plus (b) the accelerated balance of all amounts due under Agreement III, discounted to present value, totaling $43,371.61 (Agreement III paragraph 11); plus (c) late charges totaling $1,242.16 (Agreement III paragraph 12); less (d) $22,000.00 in sale proceeds from repossession and sale of the vehicle (see attached Exhibit F).

34.    The foregoing sum was demanded from CARTAGE, and CARTAGE failed and refused to pay said sum, which sure remains due and owing.

35.    As a result of the aforementioned default, KEY EQUIPMENT now also claims: (a) statutory interest at a rate of 5% per annum on the aggregate principal amount of $15,527.00, which interest amounts to $624.09 from February 10, 2007, through December 1, 2007, for unreasonable and vexatious delay of payment pursuant

to Illinois Compiled Statutes, Chapter 815, § 20512; said interest continues to accrue at a rate of $2.13 per day; and (b) attorneys' fees and costs incurred by KEY EQUIPMENT (Agreement 11 paragraph 11).

**WHEREFORE,** Plaintiff, KEY EQUIPMENT FINANCE INC., prays for judgment against Defendant, SIMOS CARTAGE CO., INC, in at least the sum of $38,140.77, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

**COUNT IV**
**BREACH OF PERSONAL GUARANTY**
**LEASE #CW01264577**

36. Plaintiff repeats, realleges and incorporates herein by reference each of the allegations contained in the foregoing paragraphs 1 through 35 of this Complaint, inclusive, as if fully set forth herein.

37. On or about November 2, 2006, Defendants SIMOS and SR, each individually, duly executed an instrument in writing and in consideration of KEY EQUIPMENT's leasing and delivering to CARTAGE a 1999 Mack CH613 truck. SIMOS and SR, each individually, unconditionally guaranteed prompt payment, at maturity or by acceleration, all indebtedness plus interest thereon owed by CARTAGE to KEY EQUIPMENT under the Vehicle Finance Agreement, regarding the 1999 Mack CH613 truck, executed on the same day.

38. Thereafter, in reliance on the aforementioned guarantees and after the guarantees were given, the vehicle was delivered to the principal debtor and due notice thereof was given to SIMOS and SR.

39. CARTAGE defaulted under the Finance Agreement and notice of the default as well as a demand for the amounts due were sent to both SIMOS and SR with each party failing to cure the default.

40. Due to SIMOS' and SR's failure to cure the amounts owed, they were in default of the guaranty agreements that were executed on November 2, 2006 as a part of the Finance Agreement of the 1999 Mack CH613 truck.

41. As a result of SIMOS' and SR's breach, KEY EQUIPMENT has incurred damages in the amount of $19,182.36, plus costs, interest and attorneys' fees as detailed in paragraphs 8-10 of Count 1.

**WHEREFORE,** Plaintiff, KEY EQUIPMENT FINANCE INC., prays for judgment against Defendants, CORNELIUS SIMOS and CORNELIO SIMOS SR., in at least the sum of $19,182.36, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

**COUNT V**
**BREACH OF PERSONAL GUARANTY**
**LEASE #CW01267897**

42. Plaintiff repeats, realleges and incorporates herein by reference each of the allegations contained in the foregoing paragraphs 1 through 41 of this Complaint, inclusive, as if fully set forth herein.

43. On or about November 22, 2006, Defendants SIMOS and SR, each individually, duly executed an instrument in writing and in consideration of KEY EQUIPMENT's leasing and delivering to CARTAGE a 2002 Mack CX613 VIN ending 012575 and a 2002 Mack CX613 VIN ending 012571. SIMOS and SR, each

individually, unconditionally guaranteed prompt payment, at maturity or by acceleration, all indebtedness plus interest thereon owed by CARTAGE to KEY EQUIPMENT under the Vehicle Finance Agreement, regarding the 2002 Mack CX613 VIN ending 012575 and the 2002 Mack CX613 VIN ending 012571, executed on the same day.

44.     Thereafter, in reliance on the aforementioned guarantees and after the guarantees were given, the vehicle was delivered to the principal debtor and due notice thereof was given to SIMOS and SR.

45.     CARTAGE defaulted under the Finance Agreement and notice of the default as well as a demand for the amounts due were sent to both SIMOS and SR with each party failing to cure the default.

46.     Due to SIMOS' and SR's failure to cure the amounts owed, they were in default of the guaranty agreements that were executed on November 22, 2006 as a part of the Finance Agreement of the 2002 Mack CX613 VIN ending 012575 and the 2002 Mack CX613 VIN ending 012571.

47.     As a result of SIMOS' and SR's breach, KEY EQUIPMENT has incurred damages in the amount of $50,688.09, plus costs, interest and attorneys' fees as detailed in paragraphs 20-22 of Count 2.

**WHEREFORE,** Plaintiff, KEY EQUIPMENT FINANCE INC., prays for judgment against Defendants, CORNELIUS SIMOS and CORNELIO SIMOS SR., in at least the sum of $50,688.09, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

**COUNT VI**
**BREACH OF PERSONAL GUARANTY**
**LEASE # CW01259456**

48. Plaintiff repeats, realleges and incorporates herein by reference each of the allegations contained in the foregoing paragraphs 1 through 47 of this Complaint, inclusive, as if fully set forth herein.

49. On or about November 7, 2006, Defendants SIMOS and SR, each individually, duly executed an instrument in writing and in consideration of KEY EQUIPMENT's leasing and delivering to CARTAGE a 2003 KW T2000 truck. SIMOS and SR, each individually, unconditionally guaranteed prompt payment, at maturity or by acceleration, all indebtedness plus interest thereon owed by CARTAGE to KEY EQUIPMENT under the Vehicle Finance Agreement, regarding the 2003 KW T2000 truck, executed on the same day.

50. Thereafter, in reliance on the aforementioned guarantees and after the guarantees were given, the vehicle was delivered to the principal debtor and due notice thereof was given to SIMOS and SR.

51. CARTAGE defaulted under the Finance Agreement and notice of the default as well as a demand for the amounts due were sent to both SIMOS and SR with each party failing to cure the default.

52. Due to SIMOS' and SR's failure to cure the amounts owed, they were in default of the guaranty agreements that were executed on November 7, 2006 as a part of the Finance Agreement of the 2003 KW T2000 truck.

53. As a result of SIMOS' and SR's breach, KEY EQUIPMENT has incurred damages in the amount of $38,140.77, plus costs, interest and attorneys' fees as

detailed in paragraphs 32-34 of Count 3.

**WHEREFORE,** Plaintiff, KEY EQUIPMENT FINANCE INC., prays for judgment against Defendants, CORNELIUS SIMOS and CORNELIO SIMOS SR., in at least the sum of $38,140.77, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

Respectfully Submitted,

KEY EQUIPMENT FINANCE INC.

By:______________________________
One of its Attorneys

Patricia E. Rademacher
Maysoun B. Iqal
Coston & Rademacher
105 W. Adams, Suite 1400
Chicago, IL 60603
Phone: 312-205-1010



EXHIBIT A

# Vehicle Finance Agreement

| Key Equipment Finance Inc. ("Secured Party") | 3075 Highland Pkwy, 7th floor Downers Grove, IL 60515 Phone: (888) 357-9467 Fax: (866) 256-2230 | Reference Agreement #: 1133585/1284577 |
|---|---|---|
| A. Debtor: SIMOS CARTAGE CO., INC. 386 CIMARRON DR W Aurora, IL 60504 | Supplier: Arrow Truck Sales Inc - Chicago 248 W South Frontage Road Bolingbrook, IL 60440 | |
| Contact: CORNELIUS SIMOS | Phone: (630) 851-2108 | |

Vehicle Description: (described below and/or as described in invoice(s) attached hereto and made a part hereof)

1998 Mack CH613

V.I.N.: [illegible]

Vehicle Location: 386 Cimarron Dr W, Aurora, IL 60504

Schedule of Payments

| Initial Term (In Months) | Total Number Of Payments | Amount of Each Periodic Payment (plus applicable taxes) | Total Initial Payment: $ 0.00 | | Other Transaction Fees (if applicable) |
|---|---|---|---|---|---|
| | | | First $0.00 | Documentation Fee $ 395.00 | $ 0.00 |
| 24 | 24 | 1,075.83 | Last $0.00 | Security Deposit $ 0.00 | |

D. DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES. THERE ARE NO WARRANTIES BY OR ON BEHALF OF SECURED PARTY AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS SECURED PARTY'S AGENT. DEBTOR ACKNOWLEDGES AND AGREES BY ITS SIGNATURE BELOW AS FOLLOWS: (A) SECURED PARTY MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE COLLATERAL, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CONDITION, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE COLLATERAL; (B) DEBTOR ACCEPTS COLLATERAL "AS IS" AND WITH ALL FAULTS; (C) DEBTOR REPRESENTS AND AGREES THAT THE COLLATERAL WILL BE USED SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (D) IF THE COLLATERAL IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE SUPPLIER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, DEBTOR'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST SECURED PARTY; (E) DEBTOR SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST SECURED PARTY; AND (F) NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE DEBTOR OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE DEBTOR OF ANY OTHER OBLIGATION UNDER THIS AGREEMENT.

E. [illegible]

F. Certificate of Acceptance: [illegible]

THIS AGREEMENT, THE TERMS OF WHICH HAVE BEEN [illegible], IS SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE OR FOLLOWING PAGE WHICH ARE MADE A PART HEREOF AND WHICH DEBTOR AND SECURED PARTY [illegible]

Secured Party:

Key Equipment Finance Inc.

Debtor: SIMOS CARTAGE CO., INC.

Signature: X [signature]

Name / Title: Cornelius Simos, Owner

REQUEST FOR ELECTRONIC PAYMENT

Please attach a voided check from the account to be debited.

The undersigned hereby authorizes and requests Secured Party to initiate electronic debit entries (and credit entries and adjustments for any debit entries in error) or effect a charge by any other commercially accepted practice to the account indicated below in the financial institution named below ("Depository"). The undersigned hereby authorizes and requests the Depository to honor the debit and/or credit entries initiated by Secured Party. This authorization is for payments due under the referenced Agreement. This authority is to remain in force until such time as all amounts due under the Agreement are paid in full or until Secured Party and Depository have received written notification from the undersigned terminating this authorization in such time and manner as to afford Secured Party and Depository a reasonable opportunity to act on it.

Customer Name (print): SIMOS CARTAGE CO., INC.

Depository Name and Branch: ______

Depository Address (city & state): ______

Depository Telephone Number: ______

Agreement Number: 1133585/1284577

Depository Routing Number: ______

Account Number: ______

Customer Signature: ______

Guaranty: In consideration of Secured Party entering into the Vehicle Finance Agreement ("Agreement"), the party(ies) or individual(s) executing this Guaranty ("Guarantor," whether one or more) unconditionally and irrevocably guarantee to Secured Party, the prompt payment and performance of all obligations of the Debtor. Guarantor agrees that this is a guaranty of payment and performance and not of collection only, and that Secured Party can proceed directly against Guarantor without first proceeding against Debtor or against the Collateral covered by the Agreement. [illegible] THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF [illegible]. [illegible]

| GUARANTOR: | GUARANTOR: | GUARANTOR: |
|---|---|---|
| X [signature] | X [signature] | X |
| SIGN NAME: Cornelio Simos, Sr | SIGN NAME: Cornelius Simos | SIGN NAME: |

Rev 12/04



# Vehicle Finance Agreement

## TERMS AND CONDITIONS

Reference Agreement: [illegible]

[illegible]



EXHIBIT B

12/5/2007

ATTACHMENT I

SIMOS CARTAGE CO.

AMOUNTS DUE

KEY EQUIPMENT FINANCE

**AMOUNTS OUTSTANDING ON LEASE**

| INVOICE | INV DUE DATE | AS OF | RENT | TAX | SUB TOTAL | # DAYS O/S | LATE CHARGE | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 02/10/07 | 12/05/07 | 1,075.87 | 0.00 | 1,075.87 | 295 | 158.69 | 1,234.56 |
| | 03/10/07 | 12/05/07 | 1,075.87 | 0.00 | 1,075.87 | 265 | 142.55 | 1,218.42 |
| | 04/10/07 | 12/05/07 | 1,075.87 | 0.00 | 1,075.87 | 235 | 126.41 | 1,202.28 |
| | 05/10/07 | 12/05/07 | 1,075.87 | 0.00 | 1,075.87 | 205 | 110.28 | 1,186.15 |
| | 06/10/07 | 12/05/07 | 1,075.87 | 0.00 | 1,075.87 | 175 | 94.14 | 1,170.01 |
| | 07/10/07 | 12/05/07 | 1,075.87 | 0.00 | 1,075.87 | 145 | 78.00 | 1,153.87 |
| | 08/10/07 | 12/05/07 | 1,075.87 | 0.00 | 1,075.87 | 115 | 61.86 | 1,137.73 |
| | 09/10/07 | 12/05/07 | 1,075.87 | 0.00 | 1,075.87 | 85 | 45.72 | 1,121.59 |
| | 10/10/07 | 12/05/07 | 1,075.87 | 0.00 | 1,075.87 | 55 | 29.59 | 1,105.46 |
| | 11/10/07 | 12/05/07 | 1,075.87 | 0.00 | 1,075.87 | 25 | 13.45 | 1,089.32 |
| | | | 0.00 | 0.00 | 0.00 | 0 | 0.00 | 0.00 |
| | | | 0.00 | 0.00 | 0.00 | 0 | 0.00 | 0.00 |
| | | | 0.00 | 0.00 | 0.00 | 0 | 0.00 | 0.00 |
| **SUB TOTAL / AMOUNTS OUTSTANDING** | | | **10,758.70** | **0.00** | **10,758.70** | | **860.70** | **11,619.40** |

**REMAINING AMOUNTS DUE UNDER LEASE**

| LEASE | | | RENT | TAX | SUB TOTAL | TOTAL |
|---|---|---|---|---|---|---|
| Schedule No. CW01264577<br>12/10/07-11/10/08<br>12 months @ $1,075.87/month<br>Discounted 6% to PV =$12,562.96 | Minus proceeds of sale: $5,000 | | 7562.96 | 0.00 | 7,562.96 | 7,562.96 |
| **SUB TOTAL / REMAINING AMOUNTS DUE UNDER LEASE (PLUS ALL TAXES DUE BUT NOT YET BILLED):** | | | **7,562.96** | **0.00** | **7,562.96** | **7,562.96** |
| **TOTAL OBLIGATION** | | | | | | **19,182.36** |



EXHIBIT
C

# Vehicle Finance Agreement

CW01267897

| Key Equipment Finance Inc. ("Secured Party") | 3075 Highland Pkwy, 7th floor Downers Grove, IL 60515 Phone: (888) 357-9457 Fax: (866) 256-2230 | Reference Agreement #: 1133585/1267897 |
|---|---|---|

**A. Debtor:** SIMOS CARTAGE CO., INC.
385 CIMARRON DR W
Aurora , IL 60504

Contact: CORNELIUS SIMOS Phone: (630) 851-2108

**Supplier:**
Arrow Truck Sales Inc - Chicago
245 W South Frontage Road
Bolingbrook , IL 60440

**Vehicle Description:** (described below and/or as described in invoice(s) attached hereto and made a part hereof )
See Exhibit A

**V.I.N:** See Exhibit A

**Vehicle Location:** 385 Cimarron Dr W, Aurora , IL 60504

**Schedule of Payments:**

| Initial Term (In Months) | Total Number Of Payments | Amount of Each Periodic Payment (plus applicable taxes) | Total Initial Payment $ 0.00 | | Other Transaction Fees (if applicable) |
|---|---|---|---|---|---|
| 36 | 36 | 1,976.20 | First $0.00 | Documentation Fee $ 395.00 | $ 0.00 |
| | | | Last $0.00 | Security Deposit $ 0.00 | |

**D. DISCLAIMER OF WARRANTIES AND CLAIMS:LIMITATION OF REMEDIES.** THERE ARE NO WARRANTIES BY OR ON BEHALF OF SECURED PARTY AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS SECURED PARTY'S AGENT. DEBTOR ACKNOWLEDGES AND AGREES BY ITS SIGNATURE BELOW AS FOLLOWS: (A) SECURED PARTY MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE COLLATERAL, ITS **MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE**, ITS DESIGN, ITS CONDITION, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE COLLATERAL; (B) DEBTOR ACCEPTS COLLATERAL "AS IS" AND WITH ALL FAULTS; (C) DEBTOR REPRESENTS AND AGREES THAT THE COLLATERAL WILL BE USED SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (D) IF THE COLLATERAL IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE SUPPLIER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, DEBTOR'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST SECURED PARTY; (E) DEBTOR SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST SECURED PARTY; AND (F) NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE DEBTOR OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE DEBTOR OF ANY OTHER OBLIGATION UNDER THIS AGREEMENT.

**E. Amendments:** No term or provision of this Agreement may be amended, altered, waived or discharged except by a written instrument signed by all parties to this Agreement.

**F. Certificate of Acceptance: The undersigned Debtor certifies to Secured Party that all items of Collateral referred to above or on the attachment(s) hereto have been received and irrevocably accepted by the Debtor and were at the time of receipt in good order and condition and acceptable to use. Debtor hereby authorizes Secured Party to immediately remit payment to Supplier. Debtor further understands that its obligations hereunder shall commence the earlier of the date that Debtor receives the Collateral or the date Secured Party remits payment to Supplier. Debtor hereby certifies that Secured Party has fully and satisfactorily performed all covenants and conditions to be performed by it under the Agreement. Debtor agrees to enforce, in its own name, all warranties, agreements or representations, if any, which may be made by the Supplier in respect to the Collateral.**

**THIS AGREEMENT, THE TERMS OF WHICH HAVE BEEN FREELY NEGOTIATED BY EACH PARTY, IS SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE OR FOLLOWING PAGE WHICH ARE MADE A PART HEREOF AND WHICH DEBTOR AND SECURED PARTY ACKNOWLEDGE THEY HAVE READ AND ACCEPTED.**

**Secured Party:**
Key Equipment Finance Inc.

Debtor: SIMOS CARTAGE CO., INC.
Signature: X
Name / Title: Cornelius Simos , Owner

## REQUEST FOR ELECTRONIC PAYMENT

**Please attach a voided check from the account to be debited**

The undersigned hereby authorizes and requests Secured Party to initiate electronic debit entries (and credit entries and adjustments for any debit entries in error) or affect a charge by any other commercially accepted practice to the account indicated below in the financial institution named below ("Depository"). The undersigned hereby authorizes and requests the Depository to honor the debit and/or credit entries initiated by Secured Party. This authorization is for payments due under the referenced Agreement. This authority is to remain in force until such time as all amounts due under the Agreement are paid in full or until Secured Party and Depository have received written notification from the undersigned terminating this authorization in such time and manner as to afford Secured Party and Depository a reasonable opportunity to act on it.

Customer Name (print): SIMOS CARTAGE CO., INC.
Depository Name and Branch: ____________
Depository Address (city & state): ____________
Depository Telephone Number: ____________

Agreement Number: 1133585/1267897
Depository Routing Number: ____________
Account Number: ____________
Customer Signature: ____________

**Guaranty:** In consideration of Secured Party entering into this Vehicle Finance Agreement ("Agreement"), the part(ies) or individual(s) executing this Guaranty ("Guarantor," whether one or more) unconditionally and irrevocably guarantee to Secured Party, the prompt payment and performance of all obligations of the Debtor. Guarantor agrees that this is a guaranty of payment and performance and not of collection only , and that Secured Party can proceed directly against Guarantor without first proceeding against Debtor or against the Collateral covered by the Agreement. Guarantor waives all defenses and notices, including those of protest, presentment and demand. Guarantor agrees that Secured Party can renew, extend or otherwise modify the terms of the Agreement and Guarantor will be bound by such changes. If Debtor defaults under the Agreement, Guarantor will immediately perform all obligations of Debtor under the Agreement, including, but not limited to, paying all amounts due under the Agreement. Guarantor will pay to Secured Party all expenses (including attorneys' fees) incurred by Secured Party in enforcing Secured Party's rights against Guarantor. This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of Debtor . If more than one Guarantor has signed this Guaranty, each Guarantor agrees that his/her liability is joint and several. Guarantor authorizes Secured Party or any of Secured Party's designees to obtain and share with others credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Secured Party determines are necessary. **THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF UTAH. GUARANTOR EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ENFORCEMENT ACTION BROUGHT BY SECURED PARTY.**

| GUARANTOR | GUARANTOR | GUARANTOR |
|---|---|---|
| X | X | X |
| SIGN NAME: Cornelius Simos | SIGN NAME: Cornelio Simos, Sr | SIGN NAME: |

Rev 12/04





# Vehicle Finance Agreement

## TERMS AND CONDITIONS

Reference Agreement: 1133585/1267897

**1. Definitions; Reports:** The words "you" and "your" refer to the DEBTOR, its successors and assigns, as shown on the reverse side or preceding page, as applicable (the "first page"). The words "we", "us" and "our" refer to the SECURED PARTY, its successors and assigns, as shown on the first page. You authorize us and our designees to obtain investigative credit reports, regarding you and each guarantor, from a credit bureau or a credit agency and to investigate the references given on any statement or data obtained and to share such reports with others.

**2. Acceptance; Term:** We agree to lend to you, and you agree to borrow from us, an amount for the purchase of the vehicle described or referenced on the first page together with all equipment, items, products and other personal property attached thereto or made apart thereof ("Collateral"), for an Interim Term as hereinafter provided and the term shown on the first page ("Primary Term" and together with the Interim Term, "Term"). The Interim Term shall commence on the date we first pay the Supplier for the Collateral and end on the day prior to our next monthly billing cycle following our payment to the Supplier or last payment to the Supplier if more than one. The Primary Term shall start on the day following the expiration of the Interim Term and continue for the number of months shown on the first page of this Agreement. We shall have no obligations hereunder until we accept this Agreement at our offices by paying Supplier for the purchase price of the Collateral.

**3. Security Interest:** You hereby grant to us a security interest under the Uniform Commercial Code ("UCC") in the property described or referenced as Collateral and all accessions and additions thereto and replacements thereof and all proceeds and products of the foregoing. Such security interest is granted to secure payment and performance by you of your obligations hereunder and under any other present or future contract nt with us.

**4. Payments; Prepayment:** You promise to pay us the payments shown on the first page ("Payments"), in advance, commencing as of the first day of the Primary Term and continuing on the same day of each month in which a Payment is due (each such date a "Payment Date"), without need of an invoice; provided, as indicated in the Schedule of Payments on the first page or Payment Schedule attached hereto, the payments included in Total Initial Payment shall be paid upon your execution of this Agreement. We reserve the right to adjust the payment shown in the Schedule of Payments, by up to 15% to reflect changes in the final amounts paid to the Supplier or amount borrowed. Any such adjustment shall be reflected on a subsequent invoice to be sent to you within 30 days. If the contemplated transaction is not consummated, the Total Initial Payment may be retained by us as partial compensation for costs and expenses incurred in preparation for the transaction. **On the Payment Date falling in the second month of the Primary Term you agree to pay us an interim payment amount equal to 1/30th of the monthly periodic payment amount multiplied by the number of days of the Interim Term.**

Your obligation to make payments and pay other amounts hereunder is absolute and unconditional and not subject to abatement, reduction or set-off for any reason whatsoever. The Primary Term shall continue for the number of months indicated on the first page. The Security Deposit shown on the first page, if any, shall not bear interest and we may apply the Security Deposit to cure any default, in which event you will promptly restore the Security Deposit to its full amount. After all of the obligations under this Agreement are fully paid and performed, any remaining balance of the Security Deposit shall be refunded to you. You may prepay your obligations under this Agreement in whole but not in part at any time upon prior written notice to us by paying us, in cash, the prepayment amount we quote you pursuant to our current discount method.

**5. Location:** You agree to maintain records showing the location of each item of Collateral. You shall report such location to us upon our request. Your failure, to maintain records showing the location of each item of Collateral and/or to report the location of each item of Collateral shall constitute a material default hereunder.

**6. Maintenance; Installation:** You are responsible for installing and keeping the Collateral in good working order. You shall not make any alterations, additions or improvements to the Collateral, which detract from its economic value or functional utility. All additions and improvements made to the Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Collateral's economic value or functional utility. If the Collateral is damaged or lost, you agree to continue making scheduled periodic payments unless you pay the Casualty Value pursuant to Section 14.

**7. Insurance; Indemnification:** You agree at all times to: (i) insure the Collateral against risk of loss in an amount not less than the Casualty Value as defined below, (ii) maintain general public liability insurance in amounts we specify, and (iii) name us on the policy as Loss Payee and Additional Insured all as required by us and from anyone who is acceptable to us. You agree to provide us with certificates or other evidence of insurance acceptable to us, before the Term begins, and during the Term. If at any time you have failed to deliver to us a valid certificate of insurance reflecting such insurance as being in effect, it will be deemed as a material default hereunder. Then we will, in addition to the other remedies available to us hereunder, have the right, but no obligation, to obtain such insurance for the Term at your expense and if so obtained, we will add to your Payments due hereunder and you will pay to us our costs of obtaining such insurance and any customary fees or charges of ours or our designees associated with such insurance. Regardless of the existence of any applicable insurance, you agree to indemnify and hold us, our employees and affiliates harmless from all suits, claims, demands, losses and liabilities arising out of damage to or the use or operation of the Collateral (including reasonable attorneys' fees incurred by us in connection with any such suit, claim, demand, loss or liability).

**8. Taxes and Fees:** You agree to pay when due or reimburse us for all taxes, fees, fines and penalties relating to use or ownership of the Collateral or to this Agreement, including documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or local government or agency. If any federal, state, county or local government or agency requires any taxes, charges or fees to be paid in advance, and we pay such taxes, charges or fees, we reserve the right to adjust the remaining Payments, so that we may recover any payment of such taxes, charges or fees. Any such adjustment shall be reflected on your subsequent invoice(s).

**9. Personal Property:** The Collateral will be and shall remain personal property and, at your expense, you shall keep the Collateral free from any and all liens and encumbrances. You shall give us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral.

**10. Titled Equipment.** Any Collateral that is subject to title registration laws shall be titled and registered as directed by us within 10 days of Debtor's receipt of the Collateral. **If the Collateral is not timely or properly registered within the 10-day period, then, in addition to the other remedies available hereunder, Debtor shall pay a late charge for each additional 30-day period during the Term the Collateral remains unregistered or improperly registered.**

**11. Default; Remedies:** If you do not pay when due or if you breach or fail to perform any of your other representations and promises under this Agreement or any other contract entered into by you and held or serviced by us or if you declare bankruptcy or insolvency or if you terminate your entity existence or take any actions regarding the cessation or winding up of your business affairs, you will be in default. If you are in default, at our election, we can accelerate and require that you pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance". The Accelerated Balance will be equal to the total of (i) accrued and unpaid amounts, and (ii) the remaining Payments. We can also pursue any of the remedies available to us under the UCC or any other law. In addition, you agree to pay our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs arising out of your default, and all non-sufficient funds charges and similar charges.

**12. Late Charge:** If any part of a Payment or other sum due hereunder is late, you agree to pay us a late charge equal to the lesser of (a) the greater of 10% of the late Payment or $29.00 or (b) the maximum amount permitted by applicable law. If any check or funds transfer request for any Payment is returned to Secured Party unpaid, Debtor shall pay Secured Party a service charge of $55 for each such returned check or request.

**13. Assignment; Inspection:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, LEASE OR ENCUMBER THE COLLATERAL OR THIS AGREEMENT UNTIL YOU HAVE SATISFIED ALL OF THE TERMS OF THE AGREEMENT. We may sell, transfer, assign, or encumber this Agreement. You agree that if we sell, transfer, assign, or encumber this Agreement, the assignee will have the rights and benefits that we assign to the assignee and will not have to perform any of our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set-offs that you may have against us. We and our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral.

**14. Risk of Loss:** You hereby assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever and no loss, theft, damage or destruction of the Collateral shall relieve you of the obligation to make scheduled Payments or any other obligation under this Agreement, and this Agreement shall remain in full force and effect except as provided below. You shall promptly notify us in writing of such loss, theft, damage or destruction. If damage of any kind occurs to any item of Collateral, you, at our option, shall at your expense (a) place the item in good repair, condition or working order, or (b) if the Collateral cannot be repaired or is lost, stolen or suffers a constructive loss under an insurance policy covering the Collateral, pay to us the "Casualty Value." The Casualty Value will be equal to the total of (i) all accrued and unpaid amounts then due and owing under this Agreement and (ii) the remaining Payments discounted to their then present value using our current method of discounting contracts.

**15. Choice of Law; Consent to Jurisdiction; Venue:** This Agreement shall be interpreted, and all rights and liabilities of the parties hereto and thereunder shall be determined and governed as to validity, interpretation, enforcement and effect, by the laws of the State of Utah. Secured Party and Debtor expressly waive any right to a trial by Jury.

**16. Miscellaneous:** During the term of this Agreement, you agree to provide us with all financial statements and copies of federal or state tax returns as we may request. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, such provision shall be inapplicable and deemed omitted, but the remaining provisions hereof, including remaining default remedies, shall be given effect in accordance with the manifest intent hereof. You agree that any delay or failure to enforce our rights under this Agreement does not prevent us from enforcing any rights at a later time. You agree that the terms and conditions reflected in this Agreement or any attachments hereto are a complete and exclusive statement of our agreement. Not withstanding the foregoing, to the extent there are errors or omissions in the information contained on the first page or any attachment to this Agreement, we may by written notice to you correct such errors or omissions. You agree that the original of this Agreement may be microfilmed or electronically duplicated and a photostatic copy of such microfilm or electronic duplication may be introduced in lieu of the original thereof and without further foundation. The parties hereto expressly waive the secondary evidence rule. You agree that this Agreement will be binding upon your successors, assigns, heirs and legal representatives. You agree that our waiver of any provision hereunder shall not constitute a waiver of any other matter. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected by applicable law, and any such excess payment will be applied to the payments in inverse order of maturity, and any remaining excess will be refunded to you.

**17. Irrevocable Limited Power of Attorney:** Debtor does hereby irrevocably appoint Secured Party and/or its assigns and agents its true and lawful attorney-in-fact which shall be deemed a power coupled with and interest with full authority and power to do and perform all and every act and thing whatsoever requisite and necessary to be done in the premises, as fully, to all intent and purposes as Debtor might or could do if personally present, with full power of substitution and revocation, to complete, sign, execute, file and deliver any title, vehicle registration or certificate of ownership, UCC financing statement(s), and to sell, record interest, transfer interest otherwise dispose of or encumber the Collateral. Secured Party and/or its assigns may apply the proceeds from any such sale or other disposition against any and all obligations of the Debtor to Secured Party and/or its assigns. If your signature on any financing statement or other instrument is required by law, you shall execute such supplemental instruments and financing statements we deem to be necessary and advisable and shall otherwise cooperate to defend our title by filing or otherwise. You also agree to pay us on demand filing, registration and releasing fees prescribed by the UCC or other law.

Rev 12/04





**EXHIBIT "A"**

Reference Agreement #: 1133585/1267897

**LESSOR:** Key Equipment Finance Inc.

**LESSEE:** SIMOS CARTAGE CO., INC.

**LOCATION:** 385 Cimarron Dr W, Aurora , IL 60504

**VENDOR:** Arrow Truck Sales Inc - Chicago
245 W South Frontage Road
Bolingbrook , IL 60440

| QTY | VEHICLE DESCRIPTION | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 1 | 2002 MACK CX613 | 1M1AE06Y62W012575 |
| 1 | 2002 MACK CX613 | 1M1AE06Y92W012571 |

CW 01267897

This Exhibit A is attached to and a part of the above referenced agreement and constitutes a true and accurate description of the vehicle(s).

Rev 12/01



EXHIBIT D

12/5/2007

# ATTACHMENT I

## SIMOS CARTAGE CO.

## AMOUNTS DUE

## KEY EQUIPMENT FINANCE

**AMOUNTS OUTSTANDING ON LEASE**

| INVOICE | INV DUE DATE | AS OF | RENT | TAX | SUB TOTAL | # DAYS O/S | LATE CHARGE | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 01/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | 263 | 259.87 | 2,236.07 |
| | 02/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | 233 | 230.23 | 2,206.43 |
| | 03/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | 203 | 200.58 | 2,176.78 |
| | 04/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | 173 | 170.94 | 2,147.14 |
| | 05/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | 143 | 141.30 | 2,117.50 |
| | 06/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | 113 | 111.66 | 2,087.86 |
| | 07/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | 83 | 82.01 | 2,058.21 |
| | 08/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | 53 | 52.37 | 2,028.57 |
| | 09/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | 23 | 22.73 | 1,998.93 |
| | 10/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | -7 | -6.92 | 1,969.28 |
| | 11/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | -37 | -36.56 | 1,939.64 |
| | 12/01/07 | 09/24/07 | 1,976.20 | 0.00 | 1,976.20 | -67 | -66.20 | 1,910.00 |
| | | | 0.00 | 0.00 | 0.00 | 0 | 0.00 | 0.00 |
| **SUB TOTAL / AMOUNTS OUTSTANDING** | | | **23,714.40** | **0.00** | **23,714.40** | | **1,162.01** | **24,876.41** |

**REMAINING AMOUNTS DUE UNDER LEASE**

| LEASE | | | RENT | TAX | SUB TOTAL | TOTAL |
|---|---|---|---|---|---|---|
| Schedule No. CW01267897<br>01/01/08 - 12/1/09<br>24-months @ $1,976.20/month<br>Discounted 6% to PV = $44,811.68 | Minus proceeds of sale: $19,000 | | 25811.68 | 0.00 | 25,811.68 | 25,811.68 |
| **SUB TOTAL / REMAINING AMOUNTS DUE UNDER LEASE (PLUS ALL TAXES DUE BUT NOT YET BILLED):** | | | **25,811.68** | **0.00** | **25,811.68** | **25,811.68** |
| **TOTAL OBLIGATION** | | | | | | **50,688.09** |



# Vehicle Finance Agreement

Key Equipment Finance Inc. ("Secured Party")
3075 Highland Pkwy, 7th floor
Downers Grove, IL 60515
Phone: (888) 357-9457 Fax: (866) 295-2230

Reference Agreement #: 1133586/1260456

A. Debtor: SIMOS CARTAGE CO., INC.
385 CIMARRON DR W
Aurora, IL 60504
Contact: CORNELIUS SIMOS
Phone: (630) 881-2158

Supplier: Arrow Truck Sales Inc - Chicago
246 W South Frontage Road
Bolingbrook, IL 60440

Vehicle Description: (described below and/or as described in invoice(s) attached hereto and made a part hereof.)
2004 Kenworth T2000
V.I.N. [illegible]

Vehicle Location: 385 Cimarron Dr W, Aurora, IL 60504

Schedule of Payments

| Initial Term (In Months) | Total Number Of Payments | Amount of Each Periodic Payment (plus applicable taxes) | Total Initial Payment $0.00 | | Other Transaction Fees (if applicable) |
|---|---|---|---|---|---|
| | | | First $0.00 | Documentation Fee $395.00 | $0.00 |
| 42 | 42 | 1,553.00 | Last $0.00 | Security Deposit $0.00 | |

D. DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES. THERE ARE NO WARRANTIES BY OR ON BEHALF OF SECURED PARTY AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS SECURED PARTY'S AGENT. DEBTOR ACKNOWLEDGES AND AGREES BY ITS SIGNATURE BELOW AS FOLLOWS: (A) SECURED PARTY MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE COLLATERAL, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CONDITION, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE COLLATERAL; (B) DEBTOR ACCEPTS COLLATERAL "AS IS" AND WITH ALL FAULTS; (C) DEBTOR REPRESENTS AND AGREES THAT THE COLLATERAL WILL BE USED SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (D) IF THE COLLATERAL IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE SUPPLIER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, DEBTOR'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST SECURED PARTY; (E) DEBTOR SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST SECURED PARTY; AND (F) NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE DEBTOR OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE DEBTOR OF ANY OTHER OBLIGATION UNDER THIS AGREEMENT.

E. Amendments. No term or provision of this Agreement may be amended, altered, waived or discharged except by a written instrument signed by all parties to this Agreement.

F. Certificate of Acceptance. The undersigned Debtor certifies to Secured Party that all items of Collateral referred to above or on the [illegible] [illegible]

THIS AGREEMENT, THE TERMS OF WHICH HAVE BEEN FAIRLY NEGOTIATED BY EACH PARTY, IS SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE OR FOLLOWING PAGE WHICH ARE MADE A PART HEREOF AND WHICH DEBTOR AND SECURED PARTY ACKNOWLEDGE THEY HAVE READ AND ACCEPTED.

Secured Party: Key Equipment Finance Inc.

Debtor: SIMOS CARTAGE CO., INC.
Signature: X [signature]
Name / Title: Cornelius Simos, President

## REQUEST FOR ELECTRONIC PAYMENT

Please attach a voided check from the account to be debited

The undersigned hereby authorizes and requests Secured Party to initiate electronic debit entries (and credit entries and adjustments for any debit entries in error) or effect a charge by any other commercially accepted practice to the account indicated below in the financial institution named below ("Depository"). The undersigned hereby authorizes and requests the Depository to honor the debit and/or credit entries initiated by Secured Party. This authorization is for payments due under the referenced Agreement. This authority is to remain in force until such time as all amounts due under the Agreement are paid in full or until Secured Party and Depository have received written notification from the undersigned terminating this authorization in such time and manner as to afford Secured Party and Depository a reasonable opportunity to act on it.

Customer Name (print): SIMOS CARTAGE CO., INC.
Depository Name and Branch: ______
Depository Address (city & state): ______
Depository Telephone Number: ______
Agreement Number: 1133586/1260456
Depository Routing Number: ______
Account Number: ______
Customer Signature: ______

Guaranty: In consideration of Secured Party entering into the Vehicle Finance Agreement ("Agreement"), the person(s) or individual(s) executing this Guaranty ("Guarantor," whether one or more) unconditionally and irrevocably guarantee to Secured Party the prompt payment and performance of all obligations of the Debtor. [illegible] THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF UTAH. [illegible]

| GUARANTOR | GUARANTOR | GUARANTOR |
|---|---|---|
| X [signature] | X [signature] | X |
| SIGN NAME: Cornelius Simos | SIGN NAME: Cornelio Simos, Sr | SIGN NAME: |

Rev 12/04



# Vehicle Finance Agreement

TERMS AND CONDITIONS

Reference Agreement: [illegible]

[illegible]



EXHIBIT F

12/5/2007

# ATTACHMENT I

## SIMOS CARTAGE CO.

## AMOUNTS DUE

## KEY EQUIPMENT FINANCE

**AMOUNTS OUTSTANDING ON LEASE**

| INVOICE | INV DUE DATE | AS OF | RENT | TAX | SUB TOTAL | # DAYS O/S | LATE CHARGE | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 02/10/07 | 12/05/07 | 1,552.70 | 0.00 | 1,552.70 | 295 | 229.02 | 1,781.72 |
| | 03/10/07 | 12/05/07 | 1,552.70 | 0.00 | 1,552.70 | 265 | 205.73 | 1,758.43 |
| | 04/10/07 | 12/05/07 | 1,552.70 | 0.00 | 1,552.70 | 235 | 182.44 | 1,735.14 |
| | 05/10/07 | 12/05/07 | 1,552.70 | 0.00 | 1,552.70 | 205 | 159.15 | 1,711.85 |
| | 06/10/07 | 12/05/07 | 1,552.70 | 0.00 | 1,552.70 | 175 | 135.86 | 1,688.56 |
| | 07/10/07 | 12/05/07 | 1,552.70 | 0.00 | 1,552.70 | 145 | 112.57 | 1,665.27 |
| | 08/10/07 | 12/05/07 | 1,552.70 | 0.00 | 1,552.70 | 115 | 89.28 | 1,641.98 |
| | 09/10/07 | 12/05/07 | 1,552.70 | 0.00 | 1,552.70 | 85 | 65.99 | 1,618.69 |
| | 10/10/07 | 12/05/07 | 1,552.70 | 0.00 | 1,552.70 | 55 | 42.70 | 1,595.40 |
| | 11/10/07 | 12/05/07 | 1,552.70 | 0.00 | 1,552.70 | 25 | 19.41 | 1,572.11 |
| | | | 0.00 | 0.00 | 0.00 | 0 | 0.00 | 0.00 |
| | | | 0.00 | 0.00 | 0.00 | 0 | 0.00 | 0.00 |
| | | | 0.00 | 0.00 | 0.00 | 0 | 0.00 | 0.00 |
| **SUB TOTAL / AMOUNTS OUTSTANDING** | | | **15,527.00** | **0.00** | **15,527.00** | | **1,242.16** | **16,769.16** |

**REMAINING AMOUNTS DUE UNDER LEASE**

| LEASE | | | RENT | TAX | SUB TOTAL | TOTAL |
|---|---|---|---|---|---|---|
| Schedule No. CW01259456<br>12/10/07-5/10/10<br>30 months @ $1,552.70/month<br>Discounted 6% to PV ≈$43371.61 | Minus proceeds of sale: $22,000 | | 21371.61 | 0.00 | 21,371.61 | 21,371.61 |
| **SUB TOTAL / REMAINING AMOUNTS DUE UNDER LEASE (PLUS ALL TAXES DUE BUT NOT YET BILLED):** | | | **21,371.61** | **0.00** | **21,371.61** | **21,371.61** |
| **TOTAL OBLIGATION** | | | | | | **38,140.77** |